IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL TANKERSLEY, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. 1:14-cv-01668-RDB |
| JAMES W. ALMAND, et al., | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR,
IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

DOUGLAS F. GANSLER
Attorney General of Maryland

MICHELE J. McDONALD
Assistant Attorney General
Federal Bar No. 23603
Courts & Judicial Affairs Division
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576–6576   (telephone)
(410) 576–6393   (facsimile)
mmcdonald@oag.state.md.us

Dated:   July 8, 2014

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION.................................................................................................................... 1

I.           THE STANDARD OF REVIEW REQUIRES DISMISSAL WHERE THE
COMPLAINT FAILS TO SET FORTH FACTS ESTABLISHING A
PLAUSIBLE CLAIM FOR RELIEF. ......................................................... 6

II.          BECAUSE THE COLLECTION OF SOCIAL SECURITY NUMBERS IS
AUTHORIZED BY FEDERAL STATUTES AND NECESSARY TO
EFFECTUATE FEDERAL PROGRAMS AND SECURE FEDERAL
FUNDING, PLAINTIFF CANNOT ESTABLISH A PLAUSIBLE CLAIM
FOR RELIEF. ..................................................................................... 8

    A.  Federal law 42 U.S.C. § 666 requires the collection of Social Security numbers
by state licensing agencies for child support enforcement purposes. ..................... 9

    B.  The Privacy Act was superseded by the provisions of the Tax Reform Act of
1976 (42 U.S.C. § 405) expressly authorizing the collection of Social
Security numbers in relation to taxation. ............................................... 15

III.        THE COMPLAINT FAILS TO STATE A CLAIM UNDER § 1983 AGAINST
THE CLIENT PROTECTION FUND AND THE COURT OF APPEALS . 18

IV.        THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION
RECOGNIZED IN THIS JUDICIAL CIRCUIT ............................................... 19

    A.  By definition, the federal Privacy Act does not apply to state agencies or state
officials ................................................................................................ 19

    B.  The Privacy Act does not create a private cause of action against state agencies
or state officials and 42 U.S.C. § 1983 will not lie to remedy an alleged
violation of the Privacy Act. .............................................................. 21

    C.  The creation of the Privacy Study Commission is determinative of Congress's
intent to both limit the application of the Privacy Act to federal agencies and
to foreclose private enforcement ........................................................ 24

V.          THE COMPLAINT FAILS TO PLAUSIBLY STATE A CLAIM OF
FEDERAL PREEMPTION UNDER THE SUPREMACY CLAUSE .......... 27

EXHIBIT LIST ....................................................................................................... 31

## TABLE OF AUTHORITIES

### CASES

*Alexander* v. *Sandoval,* 532 U.S. 275 (2001) ...................................................................... passim

*Aremu v. Dep't of Homeland Security,* 450 F.3d 578 (4th Cir. 2006) ......................................... 14

*Arizona v. United* States, 132 S. Ct. 2492 (2012) ........................................................................ 32

*Blessing v. Freestone,* 520 U.S. 329 (1997) .................................................................... 25, 26, 30

*Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122 (2d Cir. 2008) ........................................ 24

*California v. Sierra Club,* 451 U.S. 287 (1981) ...................................................................... 28, 31

*Cannon v. University of Chicago,* 441 U.S. 677 (1979) ............................................................... 26

*Chambers v. Klein,* 419 F.Supp. 569 (D.N.J. 1976) ...................................................................... 9

*Chesapeake Ranch Water Co. v. Bd. of Com'rs of Calvert County*,

    401 F.3d 274 (4th Cir. 2005) ................................................................................................. 17

*Claugus v. Roosevelt Island Hous. Mgmt. Corp.,* 1999 U.S. Dist. Lexis 6162

    (S.D.N.Y. Apr. 29, 1999) ...................................................................................................... 20

*Deeds v. County of Fairfax, Va*., 151 F.3d 1028 (4th Cir. 1998) ................................................. 25

*Dittman v. State of California,* 191 F.3d 1020 (9th Cir. 1999) ............................................. passim

*Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) ................................................... 32

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ......................................................................... passim

*In re Chapman*, 166 U.S. 661 (1897) .......................................................................................... 17

*In re Rausch*, 213 B.R. 364 (D. Nev. 1997) .................................................................................. 9

*McCauley v. Computer Aid Inc.*, 447 F.Supp.2d 469 (E.D. Pa. 2006) ......................................... 9

*Perez-Santos v. Malave, et al,* 23 Fed. Appx. 11 (1st Cir. 2001) ............................................... 24

*Peters v. Feneis*, 2009 U.S. Dist. LEXIS 116480 (D. Minn. 2009) ............................................ 24

*Peterson v. City of Detroit,* 76 Fed. Appx. 601(6th Cir. 2003) ............................................ 18, 20

*Peterson v. Michigan*, No. 11-12153, slip op. at 4 (E.D. Mich. May 27, 2011) .......................... 20

*Polchowski v. Gorris,* 714 F.2d 749 (7th Cir. 1983) ............................................................. 22, 25

*Schmitt v. City of Detroit*, 395 F.2d 327 (6th Cir. 2005) ............................................................ 21

*Schwier v. Cox,* 340 F.3d 1284 (11th Cir. 2003) ................................................................... 22, 25

*Spurlock v. Ashley County,* 281 Fed. Appx. 628 (8th Cir. 2008) ................................................. 21

*Steward v. Bryan,* 2003 LEXIS 20359 (5th Cir. 2003)............................................................ 21, 24

*Stoianoff v. Comm'r of Motor Vehicles,* 107 F.Supp. 2d 439 (S.D.N.Y. 2000) ........................... 24

*Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826 (9th Cir. 1999)..................................... 9

*Touche Ross & Co.* v. *Redington,* 442 U.S. 560 (1979) .............................................................. 26

*United States v. South Carolina,* 720 F.3d 518 (4th Cir 2013)................................................... 32

*United States v. Streich,* 560 F.3d 926 (9th Cir. 2009) .............................................................. 21

*Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498 (1990) ................................................................. 26, 30

## Statutes and Rules

**Md. Code Ann. Bus. Occ. & Prof.**
§ 10-206(a) ................................................................................................................... 28
§ 10-310, *et seq* ............................................................................................................... 2
§ 10-311(c) ..................................................................................................................... 3
§ 10-312 .......................................................................................................................... 3
§ 10-313 ................................................................................................................. passim
§ 11-408 ........................................................................................................................ 31
§ 13-308 ........................................................................................................................ 31
§ 14-314 ........................................................................................................................ 31
§ 16-308 ........................................................................................................................ 32
§ 16-3A-07 .................................................................................................................... 31
§ 17-314, ....................................................................................................................... 31
§ 18-307 ........................................................................................................................ 31
§ 2-311 .......................................................................................................................... 31
§ 3-309 .......................................................................................................................... 31
§ 4-310 .......................................................................................................................... 31
§ 5-311 .......................................................................................................................... 31
§ 6.5-312 ....................................................................................................................... 31
§ 6-310 .......................................................................................................................... 31
§ 7-308 .......................................................................................................................... 31
§ 8-307 .......................................................................................................................... 31


**Md. Code Ann. Com. Law**
§ 14-3401 ...................................................................................................................... 20


**Md. Code Ann. Fam. Law**
§ 10-119.3 ............................................................................................................. passim

**Md. Code Ann. Health Gen.**
§ 4-301 .................................................................................................................. 20


**Md. Code Ann. Health Occ.**
§ 10-311 ............................................................................................................... 32
§ 11-311 ............................................................................................................... 31
§ 12-308 ............................................................................................................... 31
§ 13-311 ............................................................................................................... 32
§ 14-316 ............................................................................................................... 32
§ 15-307 ............................................................................................................... 32
§ 1A-306 .............................................................................................................. 32
§ 2-308 ................................................................................................................. 31
§ 3-308 ................................................................................................................. 31
§ 4-309 ................................................................................................................. 31
§ 5-308 ................................................................................................................. 31
§ 7-314 ................................................................................................................. 31
§ 8-312 ................................................................................................................. 31
§ 9-311 ................................................................................................................. 31


**Federal Rules of Civil Procedure**
Fed. R. Civ. P. 56(a) ............................................................................................... 7
Fed. R. Civ. P. 56(e)(2) ........................................................................................... 8


**Federal Statutes**
20 U.S.C. § 1681(a) ............................................................................................... 16
42 U.S.C. § 1983 ............................................................................................ passim
42 U.S.C. § 2000d (1994 ed.) ............................................................................... 16
42 U.S.C. § 405 .............................................................................................. passim
42 U.S.C. § 666 .............................................................................................. passim
5 U.S.C. § 552a (note) .................................................................................... passim


**Maryland Rules**
16-811.5 .......................................................................................................... passim
16-811.6 .......................................................................................................... passim

## <u>Constitutional Provisions</u>

U.S. CONST. Art. VI ........................................................................................................ 24

## <u>Other Authorities</u>

20 Am. U.J. Gender Soc. Pol'y & L. 775 (2012) ................................................. 23, 27

H. Rep. No. 104-651 (1996) ................................................................................. 27, 29

Joint Chairmen Report, Operating budget
   http://mgaleg.maryland.gov/pubs/budgetfiscal/2013rs-budget-docs-jcr.pdf ............................. 5

Audit Report, Dep't of Human Resources, CSEA (Sept 2011)
   http://www.ola.state.md.us/Reports/Fiscal%20Compliance/CSEA11.pdf .......................... 5, 30

Pub. L. No. 93 79 (88 Stat. 1896) ......................................................................... passim

S. Rep. No. 94-938 at 391 (1976) .............................................................................. 35

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL TANKERSLEY,                    *

      Plaintiff                          *

v.                                     *   Civil Action No. 1:14-cv-01668-RDB

JAMES W. ALMAND, et al.,               *

      Defendants                         *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## INTRODUCTION

Plaintiff, Michael Tankersley, a resident of the Commonwealth of Virginia, admitted to practice law in the State of Maryland, has filed a complaint, brought under 42 U.S.C. § 1983 and the Supremacy Clause of the United States Constitution, seeking declaratory and injunctive relief against the Client Protection Fund of the Bar of Maryland, the individual trustees of the Client Protection Fund in their official capacities, the Maryland Court of Appeals, the judges of the Maryland Court of Appeals in their official capacities, and the Clerk of the Maryland Court of Appeals in her official capacity (the "Defendants").   Plaintiff alleges that the Defendants have deprived him of rights under section 7(a) of the Federal Privacy Act, 5 U.S.C. § 552a (note) when they required him to disclose his Social Security number to the Treasurer of the Client Protection Fund in compliance with Maryland Rules 16-811.5 and 16-811.6.   Plaintiff has refused to provide his Social Security number and, under the Maryland Rule 16-811.6, has been suspended from the practice of law.   *See* Compl. ¶ 4.

1

What is actually at issue in this case is the manner in which the State of Maryland has complied with state and federal requirements directing the Maryland Court of Appeals, as a licensing authority, to obtain Social Security numbers for child support enforcement and taxation purposes. Plaintiff seeks to have Maryland Rules 16-811.5 and 16-811.6 declared invalid.   Plaintiff also seeks to have the order suspending him from the practice of law declared invalid.   Finally, Plaintiff seeks to enjoin the Defendants from continuing to deny him from practicing law in Maryland.

## FACTUAL BACKGROUND

### A.     The Client Protection Fund

In 1965, the Maryland legislature authorized the Maryland Court of Appeals to establish the "Clients' Security Trust Fund", now called the "Client Protection Fund." Md. Code Ann., Bus. Occ. & Prof. § 10-310, *et seq*. (2014). The Fund was created "to maintain the integrity of the legal profession by paying money to reimburse losses caused by defalcations of lawyers," § 10-311(b), and is managed by appointed trustees. Md. Code Ann., Bus. Occ. & Prof. § 10-312.   The Court of Appeals may, by rule, require a lawyer to pay an annual fee as a condition precedent to practicing law and may specify penalties for practicing law without making payment. Md. Code Ann., Bus. Occ. & Prof.   § 10-311(c).

### B.     The Impact of the Welfare Reform Act

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act (The Welfare Reform Act), codified as 42 U.S.C. § 666.   This statute, as a condition of federal funding, requires the states to have in effect laws consistent with

2

the Reform Act and requires the use of the Social Security number as a means of locating individuals who fail to pay their child support.

In a continued effort to uphold the mandate of the Welfare Reform Act, in 2007, the General Assembly enacted legislation that added the Maryland Court of Appeals to the list of licensing authorities that may suspend or deny a license upon notification by the Child Support Enforcement Administration (CSEA) that the licensee or applicant was in arrears on child support.   Md. Code Ann., Fam. Law § 10-119.3 (2014).   The Fund, at the behest of the licensing authority, the Maryland Court of Appeals, must also provide the CSEA with information concerning an obligor in arrears on child support, including the Social Security number, and "periodically share its licensing database with the Administration." Md. Code Ann., Fam. Law § 10-119.3(c).

In 2008, the General Assembly enacted legislation requiring the Fund to provide an annual list of lawyers who have paid the yearly fee to the Comptroller which will assist the Comptroller "in determining whether each lawyer on the list has paid all undisputed taxes and unemployment insurance contributions." Md. Code Ann., Bus. Occ. & Prof. § 10-313(a).   The list provided by the Fund includes the name and mailing address of the person and "the federal tax identification number, or if the person does not have a federal tax identification number, the Social Security number." Md. Code Ann., Bus. Occ. & Prof. § 10-313(b). The statute also requires the Fund to provide the Maryland Department of Assessments and Taxation with the list to assist "in identifying new businesses within the State [for taxation purposes]."   *Id.*

On August 13, 2009, Chief Judge Robert M. Bell, sent a letter to all Maryland

3

attorneys informing them of these legislative enactments and that "[i]n order to provide accurate information to the Comptroller, SDAT and the CSEA" the attorney was directed to provide the Fund with the Social Security number or federal tax identification number (if applicable) on the form provided. *See* Def. Ex 2, attachment B.   The letter further advised that, in accordance with the Federal Privacy Act of 1974, the disclosure of the Social Security number is mandatory and made pursuant to Bus. Occ. & Prof. § 10-313 and Fam. Law § 10-119.3.   While most attorneys complied, "many – at one point over 9,100 – refused."   *See* Def. Ex. 3, attachment B, p. 7.   The Standing Committee on Rules of Practice and Procedure ("Rules Committee") initially sought to implement the requirements stemming from the statutory enactments "as part of the new Title 19 Rules." *Id*.   However, due to exigencies arising out the General Assembly's mandate that the Fund "comply with CSEA's request under FL § 10-119.3(c)(4) for a sharing of certain information in its databases, including SSNs, and the threat to preclude the expenditure of substantial FY 2014 appropriations to the Judiciary in the event of noncompliance," the Rules Committee recommended the amendment of the current Fund rules.[1]   *Id*. at 8.

---

[1]  As a result of a legislative audit finding that the CSEA "did not effectively use occupational license suspensions as an enforcement tool for delinquent noncustodial parents" and that the "Court [of Appeals] did not have social security numbers for approximately 9,800 attorneys," the auditors recommended that CSEA obtain complete data from the licensing agencies and "conduct matches of licensee data with delinquent child support obligors." http://www.ola.state.md.us/Reports/Fiscal%20Compliance/CSEA11.pdf at pp. 11-13. Based on CSEA audit, the Department of Legislative Services recommend withholding $1,000,000 from the general fund appropriation to the Judiciary until the electronic exchange of data on attorney licenses is fully implemented. The Operating Budget reflects this restriction as follows:  "[it is] provided that $1,000,000 may not be expended unless . . .the Judiciary and the Department of Human Resources (DHR) have taken corrective action with respect to the finding in the DHR audit concerning the electronic exchange of data for the purpose of license suspensions on or before January 1, 2014."

A letter dated November 15, 2013, from the Honorable Alan M. Wilner, Chair of the Rules Committee, addressed whether the proposed rule changes, "creating a procedure for the suspension of an attorney who fails to comply" with the required disclosure of a Social Security number and tax identification number, "would violate Section 7(a) of the Federal Privacy Act of 1974."   *See*, Def. Ex. 3, attachment A, p. 1.    In concluding that the proposed Rules, did not violate the Privacy Act, the Rules Committee noted that "each of those [statutory] obligations [to disclose the social security number] is either required or expressly permitted by a Federal statute enacted subsequent to the Privacy Act and thus falls within the express exception set forth in § 7(a)(2) of the Privacy Act."   *Id.*, p. 3.

The Court of Appeals subsequently adopted the proposed rules, effective January 1, 2014. As a condition to practice law in Maryland each attorney must pay an annual fee, provide to the treasurer of the Client Protection Fund the attorney's Social Security number, and provide to the treasurer the attorney's federal tax identification number or "a statement that the attorney has no such number." Md. Rule 16-811.5 (1). *See*, Def. Ex. 2, attachment D (annual assessment form).

### C.    Mr. Tankersley's Non-Disclosure

Plaintiff was admitted to the Maryland bar in 1986. Compl. ¶ 4.   As a Maryland attorney, he was sent a copy of Chief Judge Bell's 2009 letter.   Plaintiff did not, however, provide his Social Security number as directed. *Id.*   On February 10, 2014, the Fund sent

---

http://mgaleg.maryland.gov/pubs/budgetfiscal/2013rs-budget-docs-jcr.pdf at p. 2, Joint Chairmen Report, Operating budget. The Judiciary took immediate steps to ensure compliance as outlined in the Judicial Budget Overview and Introduction (Def. Ex. 4, attachment A) and in Chief Judge Bell's correspondence to the General Assembly. *See* Def. Ex. 2, attachment C.

Mr. Tankersley a Final Notice of Delinquency.   *See* Compl. Exhibit A.   The notice stated

that the failure to provide a Social Security number within 30 days would result in the entry

of an order by the Court of Appeals of Maryland prohibiting the attorney from the practice

of law.   *Id.*   On March 10, 2014, Plaintiff responded to the Notice, outlining his legal

argument.   *See* Compl. Ex. B.    By Order filed March 20, 2014, the Court of Appeals and

its clerk signed an order suspending Plaintiff from the practice of law.   *See* Compl. Ex. C.

## I.     THE STANDARD OF REVIEW REQUIRES DISMISSAL WHERE THE COMPLAINT FAILS TO SET FORTH FACTS ESTABLISHING A PLAUSIBLE CLAIM FOR RELIEF.

Mr. Tankersly's Complaint should be dismissed because it fails to satisfy the

"plausibility" standard adopted by the Supreme Court. "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility" standard

demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129

S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). It is *not* sufficient that the pleadings

merely "le[ave] open the possibility that the plaintiff might later establish some set of

undisclosed facts to support recovery."   *Id.* at 1968 (internal quotation and alteration

omitted).

In applying this standard, the Court is "not bound to accept as true a legal

conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice" and "are not

entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1949-50. "[I]n determining whether

6

to dismiss the complaint," the Court may consider documents attached to the motion to dismiss that are "integral to and explicitly relied on in the complaint," *American Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) and "[w]hen the bare allegations of the complaint conflict with" those "exhibits or other documents," "the exhibits or documents prevail." *Fare Deals Ltd. v. World Choice Travel.com, Inc*., 180 F. Supp. 2d 678, 683 (D. Md. 2001) (citing *Fayetteville Investors v. Commercial Builders, Inc*., 936 F.2d 1462, 1465 (4th Cir. 1991)).

As explained below, Mr. Tankersly's allegations do not permit this Court "to draw the reasonable inference" that these individual defendants, the Court of Appeals, the Client Protection Fund, or the Clerk are liable under the cited federal laws prohibiting the denial of a "right, benefit or privilege," based on an individual's refusal to provide the Social Security number, where federal law expressly authorizes the collection and use of the SSN. *Iqbal*, 129 S. Ct. at 1949.   The "Complaint must be dismissed" because it "fails to reveal any claim upon which relief can be granted." *Alexander v. Marriott Int'l, Inc*., No. RWT-09-2402, 2011 U.S. Dist. LEXIS 33329 at *9 (D. Md. March 29, 2011) (granting motion under Fed. R. Civ. P. 12(b)(6)). Where, as here, "Defendants have demonstrated that" federal law "supersedes the Privacy Act", dismissal under Rule 12(b)(6) is warranted. *Greidinger v. Almand, et al*., No. RDB-14-1454, 2014 U.S. Dist. LEXIS 91054 *18 (D. Md. July 3, 2014).

In the alternative, if it is determined that the motion should be treated as one for summary judgment, the Court should enter summary judgment in favor of Defendants as to all claims, there being no genuine issue of material fact.

II.   **BECAUSE THE COLLECTION OF SOCIAL SECURITY NUMBERS IS AUTHORIZED BY FEDERAL STATUTES AND NECESSARY TO EFFECTUATE FEDERAL PROGRAMS AND SECURE FEDERAL FUNDING, PLAINTIFF CANNOT ESTABLISH A PLAUSIBLE CLAIM FOR RELIEF.**

To resolve this case, the Court "need not decide whether there is a private cause of action for an individual under Section 7 [of the Privacy Act]," or whether a claim may be brought under the Supremacy Clause.  *Greidinger v. Almand, et al*., No. RDB-14-1454, 2014 U.S. Dist. LEXIS 91054 *38 (D. Md. July 3, 2014).  Thus, the Court may avoid "follow[ing] the child of calamity into the murky waters of Privacy Act jurisprudence." *Id*. at * (quoting White v. Cain, 2:10-CV-01182, 2011 WL 1087489 (S.D. W.Va. Mar 21, 2011).  Because federal law clearly provides for the collection and use of Social Security numbers, and this Court has expressly found that both 42 U.S.C. § 666 and 42 U.S.C. § 405 supersede the Privacy Act, the Complaint cannot state a "plausible" claim for relief and must be dismissed.  *Id*. at * 31, 37.

Thus, no violation of the Privacy Act occurs where a state agency collects Social Security numbers pursuant to federal law for the express purpose of ensuring compliance with a federal program and continued federal funding.  *See e.g.*, *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 844 (9th Cir. 1999) (no denial of religious freedom where federal law requires employer to collect Social Security numbers and no violation of Privacy Act as employer was a private entity); *McCauley v. Computer Aid Inc.*, 447 F.Supp.2d 469, 477 (E.D. Pa. 2006) (no violation of the Privacy Act where defendant required by federal law to obtain plaintiff's Social Security number); *In re Rausch*, 197

B.R. 109 (Bankr. D. Nev. 1996), *aff'd by In re Rausch*, 213 B.R. 364 (D. Nev. 1997) (petition preparer must supply Social Security number). *See also Chambers v. Klein*, 419 F.Supp. 569 (D.N.J. 1976) (declining to provide injunctive relief where the federal Aid to Families with Dependent Children program required Social Security numbers, and non-compliance with federal regulation endangered federal funding).   Nor is there a violation when Social Security numbers are collected for tax enforcement purposes. Here, two separate federal statutes authorize the collection of Social Security numbers – 42 U.S.C. § 666 and 42 U.S.C. § 405.

>    **A.    Federal law 42 U.S.C. § 666 requires the collection of Social Security numbers by state licensing agencies for child support enforcement purposes.**

To ensure continued federal funding for child support enforcement in Maryland and in compliance with the federal law directing states to enact procedures requiring the collection of "the social security number of--(A) any applicant for a professional license," 42 U.S.C. § 666 (a)(13), in 1997, the Maryland General Assembly enacted certain child support enforcement measures.[2]   *See* 1997 Md. Laws Ch. 609.   Section 10-119.3(b) of the Family Law Article provides, in pertinent part:

---

[2] The 1996 Personal Responsibility and Work Opportunity Reconciliation Act (the Welfare Reform Act) increased federal pressure for states to collect child support payments from absent parents with the goal of decreasing welfare costs.   20 Am. U.J. Gender Soc. Pol'y & L. 775, 780 (2012). The collection of data was central to the federal government's enforcement procedures that it imposed upon the States.   H. Rep. No. 104-651 (1996). Programs of data matching were mandated that would use data collected at the state level to "match" this data to unpaid child support orders. *Id*. at 1424-1425. This information could then be used to withhold income tax refunds, garnish wages, deny the issuance of passports, preclude the renewal of professional and business licenses, etc.   The use of the Social Security number is essential to all of these collection systems.

> (b) Duty of licensing authority generally. -- A licensing authority shall:
>> (1) require each applicant for a license to disclose the Social Security number of the applicant; and
>> (2) record the applicant's Social Security number on the application.

Consistent with the federal requirement that states enact procedures "affording access" including "automated access" to the "records of occupational and professional licenses" (42 U.S.C. § 666(c)(D)(i)(IV)) the General Assembly authorized the state Child Support Enforcement Administration (CSEA) to request information concerning "any obligor in arrears in paying child support," including the name and Social Security number of the obligor, and to "request a licensing authority to periodically share its licensing database with the Administration."   Md. Code Ann., Fam. Law § 10-119.3(c).

Likewise, consistent with the federal requirement that states enact procedures governing the withholding, suspension or restriction of "professional and occupational licenses … of individuals owing overdue support," (42 U.S.C. § 666(a)(16)) section 10-119.3(e) provides that the state CSEA may "request a licensing agency to suspend or deny an individual's license" if the individual is in arrears on a child support order.   Fam. Law § 10-119.3(e).

In 2007, the definition of "licensing authority" was enlarged to include the Maryland Court of Appeals, *see* Fam. Law § 10-119.3(a)(3)(ii), and the requirement that an attorney be admitted to the bar of the court constitutes a license that is necessary to "practice or engage in a particular business, occupation, or profession."  Fam. Law § 10-119.3(a)(iii).   *See also* Md. Code Ann., Bus. Occ. & Prof. § 10-206(a).   As a condition

to practice law in Maryland each attorney must pay an annual fee, provide to the treasurer of the Client Protection Fund the attorney's Social Security Number, and provide to the Treasurer the attorney's federal tax identification number or "a statement that the attorney has not such number."  Md. Rule 16-811.5 (1).  *See also* Def. Ex. 3, attachment B, p.7 (noting that although the Court of Appeals is the licensing agency, the responsibility to provide the Comptroller, the Department of Assessment and Taxation and the CSEA with Social Security numbers has been delegated to the Client Protection Fund).

The requirement that states collect the Social Security number of an applicant for a professional license, 42 U.S.C. § 666(a)(13), and the state laws and rules implementing that requirement, Fam. Law § 10-119.3(b) and Md. Rule 16-811.5, advance the stated legislative goal of creating and enabling effective child support enforcement mechanisms. *See* H. Rep. No. 104-651 at 5 (1996) (one of the benefits of welfare reform is that "child support enforcement is significantly strengthened to ensure that absent noncustodial parents provide financial support for their children [and that] uniform State tracking procedures are established to catch deadbeat parents.").   That legislative purpose, reflected in the state's procedures to suspend the professional licenses of individuals "owing overdue support," 42 U.S.C. § 666 (a)(16), and the procedures for providing automated access to the licensing records, is frustrated by the reading of the statute now advanced by Plaintiff.

Mr. Tankersley's argument that he is not presently an applicant to the Maryland bar and, therefore, is not subject to the disclosure requirement, cannot bear the weight he would place on it and was expressly rejected by the only court to have considered it.

*Greidinger v. Almand, et al.*, No. 14-1454, 2014 U.S. Dist. LEXIS 91054 *25 (D. Md. July 3, 2014).   One purpose behind requiring states to establish procedures for collecting Social Security numbers of license applicants, including professional licenses, was to ensure that the CSEA would be able to engage in a computerized match of the licensees and the individuals owing child support.   That is, "affording access" including "automated access" to the "records of occupational and professional licenses." 42 U.S.C. § 666(c)(D)(i)(IV).   Federal law likewise requires states to have procedures for suspending professional licenses based on the failure to pay child support.   42 U.S.C. § 666(a)(16).   Without Social Security numbers, however, such tools are of limited value.

In fact, one of the deficiencies noted in the legislative audit of the Department of Human Resources, Child Support Enforcement Administration, was that the CSEA was unable to "effectively use occupational license suspensions as an enforcement tool" with respect to attorneys because "the Court did not have social security numbers for approximately 9,800 attorneys."   Audit Report, Department of Human Resources, Child Support Enforcement Administration (September 2011) p. 12, available at http://www.ola.state.md.us/Reports/Fiscal%20Compliance/CSEA11.pdf.   The audit report noted that "[w]ithout social security numbers, CSEA is precluded from performing automated matches of the licensing data with its automated system and, therefore, it cannot effectively use occupational license suspensions as an enforcement tool."   *Id.*

If attorneys already admitted to the practice of law are not required to disclose their Social Security numbers as licensees, the federal statutory provisions requiring the states to implement the enforcement mechanisms authorized by Section 666 are rendered

meaningless.   As this Court recognized a narrow construction of "applicant" "that excludes current license holders would render the threat of suspension under § 666(16) meaningless" insofar as "applicants cannot be suspended, only those who already hold a license can." *Greidinger v. Almand, et al.*, No. 14-1454, 2014 U.S. Dist. LEXIS 91054 *25-26 (D. Md. July 3, 2014).   Indeed, such a reading effectively insulates an entire class of attorneys from license suspension due to non-payment of child support simply because they are not required to submit renewal applications to practice law.   *See* Def. Ex. 3, attachment B, p. 7-8.   This court must again reject such a clearly absurd result as inconsistent with the expressed legislative intent.   *Aremu v. Dep't of Homeland Security*, 450 F.3d 578, 583 (4th Cir. 2006) ("[A] court must, if possible, interpret statutes to avoid absurd results."). Such a reading of the statutory language would neither advance the purpose of the federal statute or the state laws implementing it.

Nothing in the legislative history suggests that Congress considered how this provision should be applied in the context of attorney licensure where attorneys are not subject to renewal application requirements.   Indeed, a survey of Maryland's licensing programs reveals that no other occupation or profession, subject to a licensing requirement, maintains a license to practice for an unlimited period of time.   Every other occupation or professional license requires that the license be renewed and that the licensee submit a renewal application.   For example, nurses must submit an application to renew their licenses every year.   *See* Md. Code Ann., Health Occ. § 8-312 (2014).   Accountants, architects, barbers, cosmetologists, electricians, stationary engineers, foresters, certified interior designers, pilots, private detectives, professional engineers, home inspectors, real

estate brokers, security system technicians, audiologists, hearing aid dispensers, speech language pathologists, chiropractors, dentists, licensed dietitians and nutritionists, morticians and funeral directors, nursing home administrators, optometrists, pharmacists, physical therapists, physician assistants, podiatrists, professional counselors and therapists, psychologists, and social workers must all submit an application for renewal of licenses every two years.  *See* Bus. Occ. & Prof. § 2-311, § 3-309, § 4-310, § 5-311, § 6-310, § 6.5-312, § 7-308, § 8-307, § 11-408, § 13-308, § 14-314, § 16-3A-07;§ 17-314, § 18-307; Health Occ. § 2-308, § 3-308, § 4-309, § 5-308, § 7-314, § 9-311, § 11-311, § 12-308, § 13-311, § 15-307, § 16-307, § 17-504, § 18-309, § 19-308 (2014).   Real estate appraisers, acupuncturists, and physicians must renew every three years.  *See* Bus. Occ. & Prof. § 16-308; Health Occ. § 1A-306, § 14-316 (2014); *see also* Health Occ. § 10-311 (requiring occupational therapists to submit an application to renew their licenses as set by their board).

Thus, in every other occupation or profession, the database of licensees would be repopulated with information, including the Social Security number, every few years based on the renewal cycles.   Under Plaintiff's interpretation of the statute, the database of attorney records could only ever include the Social Security number of attorneys admitted to practice after the effective date of Family Law § 10-119.3(b), or those who voluntarily disclosed the number.   That is, an entire class of licensed attorneys would be beyond the purview of the child support enforcement match and license suspension enforcement provisions.   Neither the legislative history nor the statute, when read in its totality, supports such an absurd reading.   When applying 42 U.S.C. § 666(a)(13) to attorney

licensure, which does not provide for renewal applications, the statute must be read to effectuate its intended purpose – to foster the creation and use of effective child support enforcement tools.

Because courts should reject "a literal application of the statute [which] would thwart its obvious purpose, or in which a literal application of the statute would produce an absurd result," (*Chesapeake Ranch Water Co. v. Bd. of Com'rs of Calvert County*, 401 F.3d 274 (4th Cir. 2005) (quoting *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 603 n.2 (4th Cir. 1999) (citations omitted)), this court should reject Mr. Tankersley's narrow reading of 42 U.S.C. § 666(a)(13) and instead give the statute a "sensible construction, such as will effectuate the legislative intention." *Id.* (quoting *In re Chapman*, 166 U.S. 661, 667 (1897))   (citations   omitted).   Consistent   with   that   legislative   intent,   section 666(a)(13) authorizes the collection of Social Security numbers of attorney applicants and licensees for child support enforcement purposes.

**B.    The Privacy Act was superseded by the provisions of the Tax Reform Act of 1976 (42 U.S.C. § 405) expressly authorizing the collection of Social Security numbers in relation to taxation.**

Collection of Mr. Tankersley's Social Security number was likewise authorized by 42 U.S.C. § 405, a legislative enactment that expressly superseded the Privacy Act. Section 405 (c)(2)(c)(i) provides:

> It is the policy of the United States that any State (or political subdivision thereof) may, in the administration of any tax…utilize the social security account numbers issued by the Commissioner of Social Security for the purpose of establish the identification of individuals affected by such law, and may require any individual who is or appears to be so affected to furnish to such State (or political subdivision thereof) or any

agency thereof …

This provision not only authorizes the collection of Social Security numbers for identification purposes, in the administration of a tax, the statute expressly provides that any provision of Federal law inconsistent "with the policy set forth in clause (i) . . .shall, on and after the date of the enactment of this subparagraph [enacted Oct. 4, 1976], be null, void, and of no effect."   42 U.S.C. § 405(c)(2)(C)(v).   "Thus, § 7 of the Privacy Act, insofar as it relates to the 'privilege' at issue in this case, has been superseded by a subsequent amendment to the Social Security Act."   *Peterson v. City of Detroit,* 76 Fed. Appx. 601, 601 (6th Cir. 2003).

The legislative history likewise confirms that the "superseding language" quoted above, which authorizes the collection of Social Security numbers, was expressly enacted to enable State and local governments to collect Social Security numbers as necessary for the positive identification of taxpayer.   *See* S. Rep. No. 94-938 at 391 (1976). This authorization is broad and extends to "any law."   The Senate Committee on Finance acknowledged the limitations contained in the Privacy Act of 1974 noting that "Federal, State and local agencies may not deny any individual any rights … provided by law because such individual refuses to disclose his social security number" (*Id.*), but advocated for the use of the Social Security number in the administration of taxes stating that the "committee believes that State and local governments should have the authority to use social security numbers for identifications purposes when they consider it necessary for administrative reasons."   *Id.* at 391-92.   When explaining the amendment to the Social Security Act, the committee states "section 205(c)(7) of the Social Security Act [is

16

amended] to establish the policy of the United States that any State … may use social security numbers for the purposes of establishing the identification of individuals affected by any law or program within its jurisdiction.   The State may, in addition, require any such individual to furnish his social security number … to the State.   *This amendment further provides that, to the extent that any existing provision of Federal law is inconsistent with the policy set forth above, such provision shall be null, void and of no effect.*"   *Id.* (emphasis added).

Thus, consistent with the express authorization in 42 U.S.C. § 405(c)(2)(C)(i) that "…any state…may in the administration of any tax …. require any individual …to furnish to such State … or any agency thereof … the social security account," Mr. Tankersley was required, pursuant to Md. Rule 16-811.5, to provide the Fund with his Social Security number and tax identification number.

Each court that has considered the issue has expressly found that "a subsequent amendment to the Social Security Act permits states to require disclosure of social security numbers in the administration of" certain State laws identified in 42 U.S.C. § 405(c)(2)(C)(i.). *See Peterson v. City of Detroit*, 76 Fed. Appx. 601, 602 (6th Cir. 2003); *see also Stoianoff v. Commissioner*, 107 F. Supp. 2d 439, 442-43 (S.D.N.Y. 2000) (finding that to the extent there was any inconsistence between § 7 of the Privacy Act and the 1976 amendment to the Social Security Act, Congress chose to void § 7 of the Privacy Act); *Schweir v. Cox*, 340 F. 3d 1284, 1291 (11th Cir. 2003) (finding that § 405 supersedes the Privacy Act for the collection of taxes and driver's license but declining to extend to voting; *Peterson v. Michigan*, No. 11-12153, slip op. at 4 (E.D. Mich. May 27, 2011)

17

(citing *Peterson v. City of Detroit* and stating that 42 U.S.C. § 405(c)(2)(C)(i) "supersedes § 7 of the Privacy Act"); *Claugus v. Roosevelt Island Hous. Mgmt. Corp.,* 1999 U.S. Dist. Lexis 6162 (S.D.N.Y. Apr. 29, 1999) (considering housing management corporation to be state actor for Privacy Act purposes but finding that Privacy Act does not apply to income verification process for public housing program because of exception created by 42 U.S.C. § 405(c)(2)(C)(i)).

## III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER § 1983 AGAINST THE CLIENT PROTECTION FUND AND THE COURT OF APPEALS

Plaintiff's claims for relief against the Client Protection Fund and the Maryland Court of Appeals must be dismissed because these entities are state agencies and as such, partake of the State's sovereign immunity.   While there can be no real dispute that the titular head of the judicial branch of state government is a State entity, Article IV, Section I of the Maryland Constitution and Md. Code Ann., Cts. & Jud. Proc. § 1-301, confirm that the plan of government contemplates a judiciary and that the Court of Appeals sits at its apex. Likewise, the Client Protection Fund ("the Fund") was established as a State entity by Maryland law.   Md. Code Ann., Bus. Occ. & Prof. § 10-311.   Its purpose is to compensate victims of lawyers' defalcations.   *See Folly Farms I, Inc. v. Trustees of Clients' Sec. Trust Fund*, 282 Md. 659 (1978).   Members of the both  the Court of Appeals and the Fund are considered "state personnel" for purposes of the Maryland Tort Claims Act.   *See* Md. Code Ann., State Gov't § 12-101 (a)(3)(i).

Because the State is not a "person" within the meaning of § 1983, such" actions do not lie against a State."  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69

(1997); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). While "a state official in his or her official capacity" can be sued for injunctive relief under § 1983, *Victors v. Kronmiller*, 553 F. Supp.2d 533, 544, n.11 (D. Md. 2008), claims for prospective relief are never viable against the State itself or its agencies. *See, e.g. Lett v. Magnant*, 965 F.2d 251, 255 (7th Cir. 1992) (discussing *Will* and noting the exception under *Ex Parte Young* that State officials (but not the State itself) may be sued in their official capacities under § 1983 where the plaintiff seeks prospective relief). Where, as here, Plaintiff seeks to sue a state agency under § 1983, such a claim will not lie and must be dismissed.

### IV.   THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION RECOGNIZED IN THIS JUDICIAL CIRCUIT

The legislative history as well as the statutory language of the Privacy Act confirms that Congress did not intend for individual plaintiffs to have access to the federal courts to enforce the Privacy Act.

#### A.   By definition, the federal Privacy Act does not apply to state agencies or state officials

The Sixth, Fifth and Ninth Circuits have held that the Privacy Act applies only to federal agencies based on the incorporation of the definition of "agency" found in the Freedom of Information Act (FOIA) into the Privacy Act. *See Schmitt v. City of Detroit*, 395 F.2d 327, 329-30 (6th Cir. 2005); *Steward v. Bryan,* 2003 LEXIS 20359 (5th Cir. 2003); *Dittman v. State of California,* 191 F.3d 1020, 1028 (9th Cir. 1999).  *See Spurlock v. Ashley County,* 281 Fed. Appx. 628, 629 (8th Cir. 2008); *see also United States v. Streich,* 560 F.3d 926, 935 (9th Cir. 2009) ("The Federal Privacy Act does not apply to state agencies."); *Polchowski v. Gorris,* 714 F.2d 749, 752 (7th Cir. 1983). Because the

entities referred to under FOIA are federal agencies, the courts have concluded that the statutory references within the Act to an "agency" concern only federal agencies.   The Eleventh Circuit, in contrast, has held that the uncodifed provision 7(a), by its express terms, apply to state agencies.   *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003).

Although Plaintiff seeks to distinguish the holding in *Dittman v. State of California,* 191 F.3d 1020, 1028 (9th Cir. 1999), on the basis that the case concerns the disclosure of a Social Security number under § 3 of the Privacy Act, and not the uncodified § 7, Plaintiff's interpretation ignores congressional intent.   Pl. Mem., p. 12.   The legislative history of the Privacy Act reflects that the scope of the Act was significantly narrowed from its original formation in Senate Bill 3418.   This narrowing in scope evidences congressional intent to limit the Act's application to only federal agencies.   *See* Def. Ex. 5.   The Senate bill initially applied broadly and imposed limitations and requirements on "[a]ny Federal agency, State or local government, or any other organization maintaining an information system that includes personal information," Sec. 201(a).   The Senate bill defined "organization" to include a "Federal agency; the government of the District of Columbia; any authority of any State, local government, or other jurisdiction; any public or private entity engaged in business for profit."   Sec. 301(6), Senate Bill 3418.   Def. Ex. 5.   The draft legislation further provided that "[i]t shall be unlawful for any organization to require an individual to disclose or furnish his social security account number, for any purpose in connection with any business transaction or commercial or other activity. . .unless the disclosure or furnishing of such number is specifically required by law."   *Compare* House Bill 16373 (limited to Federal agencies), Def. Ex. 6.   The law as ultimately enacted,

however, tracks the House of Representatives version of the bill and applies exclusively to

Federal agencies.   Because Congress narrowed the definition of "agency" from the initial

version of the bill these revisions show deliberate Congressional action to eliminate the

bill's application to states.   *See* 93 P.L. 579; 88 Stat. 1896, at 1897; 42 U.S.C. § 552(a)(1).

Def. Ex. 7.

The congressional findings supporting the legislation and the articulated purpose of

the Act further explain that the Act applies to Federal agencies and provides for redress

against those agencies: "The purpose of this Act. ... is to provide certain safeguards for an

individual against an invasion of personal privacy by requiring Federal agencies ... to [inter

alia] ... be subject to civil suit for any damages which occur as a result of willful or

intentional action which violates any individual's rights under this Act." Pub. L. No.

93-579 § 2(b). Accordingly, the civil remedies available for enforcement of the Act (*see* 42

U.S.C § 552a (g)) apply exclusively to violations by Federal agencies.   The narrowing of

the definition of "agency" in the Privacy Act from the initial versions of the Act show that

Congress considered and then rejected having the Privacy Act apply to states.

**B.      The Privacy Act does not create a private cause of action against
          state agencies or state officials and 42 U.S.C. § 1983 will not lie to
          remedy an alleged violation of the Privacy Act.**

The Privacy Act does not create a private cause of action against state agencies,

private entities or state and local officials. *Perez-Santos v. Malave, et al,* 23 Fed. App'x.

11, 2 (1st Cir. 2001); *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 124 (2d Cir.

2008) ("This Court, joining many of its sister Circuits, has accordingly held that the private

right of civil action created by the Privacy Act is specifically limited to actions against

agencies of the United States government."); *Steward v. Bryan,* 2003 LEXIS 20359 (5th Cir. 2003) (holding that there is no private right of action created by the Privacy Act and actions under the Act are limited to agencies of the federal government). *See also Stoianoff v. Comm'r of Motor Vehicles,* 107 F.Supp. 2d 439, 441 (S.D.N.Y. 2000) (granting defendant's motion to dismiss plaintiff's Privacy Act claim because the Privacy Act provides no private right of action against a state agency or official); *Peters v. Feneis*, 2009 U.S. Dist. LEXIS 116480 (D. Minn. 2009) (granting defendant's motion to dismiss plaintiff's Privacy Act claim brought under 42 U.S.C. § 1983 because the Privacy Act provides no private right of action against a state agency or official).

Although the Fourth Circuit has not determined whether a § 1983 claim will lie to enforce rights alleged under the Privacy Act (*see Deeds v. County of Fairfax, Va.*, 151 F.3d 1028 (4th Cir. 1998) (unpublished))[3] two circuits have concluded that "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983," Congress intended to foreclose the use of § 1983 to enforce rights alleged under the Privacy Act. *Dittman v. State of California,* 191 F.3d 1020, 1028 (9th Cir. 1999) (*quoting Blessing v. Freestone,* 520 U.S. 329, 341 (1997)); *Polchowski v. Gorris*, 714 F.2d 749, 752 (7th Cir. 1983). *Compare Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) (holding that because the remedial scheme of section 3 of the Federal Privacy Act does not apply to uncodified section 7, Congress did not foreclose a remedy under § 1983).

Section 1983 relief is available only if the statute creates enforceable rights and if

---

[3] See *White v. Cain*, 2011 LEXIS 29012 (W.D.W. Va. 2011) (whether Privacy Act can be enforced under 42 U.S.C. § 1983 is an open issue in the Fourth Circuit).

Congress has not foreclosed such enforcement either expressly or impliedly.   Congress can manifest its intent to preclude the use of § 1983 either expressly "or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997); *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 509 (1990).

"[W]hether Congress . . . intended to create a private right of action [is] definitively answered in the negative" where "a statute by its terms grants no private rights to any identifiable class." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284  (2002), quoting *Touche Ross & Co.* v. *Redington,* 442 U.S. 560, 576 (1979) (citations omitted). To create a private right, the text must be unambiguously and unmistakably "phrased in terms of the persons benefited." *Id*., quoting *Cannon v. University of Chicago,* 441 U.S. 677, 692, n.13 (1979) (citations omitted). Even where the statute is phrased in "explicit right-creating terms a plaintiff suing under an implied right of action still must show that the statute manifests the intent "to create not just a private *right* but also a private *remedy*."" *Id*. at 322, (quoting *Alexander* v. *Sandoval,* 532 U.S. 275, 286 (2001) (emphases added) (citations omitted)). Here, the phrasing of the Privacy Act fails to support Plaintiff's claimed entitlement to a right.

Sections 7(a) and 7(b) of the Privacy Act are directed at the conduct of the governmental agencies – "[i]t shall be unlawful for any Federal, State or local government to deny any individual any right, benefit or privilege," and "[a]ny Federal, State, or local government agency which requests an individual to disclose his social security number shall. . ." -- not at the individual person.   For example, the Supreme Court has found an

enforceable private right under Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 because the statutory language is phrased "with an *unmistakable focus* on the benefited class." *Id,* (quoting *Cannon*, 441 U.S. at 691).   Title VI provides: "No *person* in the United States *shall* . . . be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national origin. 42 U.S.C. § 2000d (1994 ed.) (emphasis added). Title IX provides: "No *person* in the United States *shall,* on the basis of sex . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added).   "There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices."   *Cannon*, 441 U.S. 677 at 690-693.

Thus, where the Privacy Act regulates the governmental agency's conduct, and is not directed at the individual, it does not create enforceable rights.  *See Alexander v. Sandoval*, 532 U.S. at 289 ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons'" (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

### C.   The creation of the Privacy Study Commission is determinative of Congress's intent to both limit the application of the Privacy Act to federal agencies and to foreclose private enforcement

The legislative history of the Privacy Act and the creation of the Privacy Study

Commissions are dispositive of both the application of the Privacy Act to state agencies and whether there the alleged rights afforded by the Privacy Act may be enforced through 42 U.S.C. § 1983.   Congress opted to create a Privacy Protection Study Commission to evaluate the Act's impact on state and private entities, and moved forward with federal application only.   93 P.L. No. 579, Sec. 5(a)(1); 88 Stat, 1896, at 1905.   Section 5(b) directs the Commission to:

> (1) make a study of the data banks, automated data processing programs, and information systems of governmental, regional, and private organizations, in order to determine the standards and procedures in force for the protection of personal information; and
>
> (2) recommend to the President and the Congress the extent, if any, to which the requirements and principles of section 552a of title 5, United States Code, should be applied to the information practices of those organizations by legislation, administrative action, or voluntary adoption of such requirements and principles, and report on such other legislative recommendations as it may determine to be necessary to protect the privacy of individuals while meeting the legitimate needs of government and society for information.

Pub. L. No. 93-579 (88 Stat. 1896, at 1906).   The import of this provision is two-fold. First, it reflects Congress' intent to reevaluate the scope of the application of the Privacy Act at a later date including its application to state governmental organizations.   Second, it confirms the shared understanding that Congress did not intend to create private rights subject to enforcement against state officials through § 1983 and foreclosed private enforcement "against any entity other than federal agencies" by including a comprehensive enforcement scheme in section 3 of the Act.   *Dittman,* 191 F.3d at 1028 (emphasis in original).

Whether the "requirements and principles of section 552a. . .should be applied to

the information practices" of governmental organizations includes the right of enforcement for alleged violations found in 42 U.S.C § 552a (g).   That the issue of whether there should be enforcement against governmental organizations (other than Federal agencies) was left for further study demonstrates that Congress did not intend to authorize enforcement actions against the states.   Thus, an "express provision or other specific evidence from the statute itself [demonstrates] that Congress intended to foreclose" a private action under section 1983.   *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 520-21 (1990).   That is consistent with the *Dittman* court's conclusion that Congress clearly intended to foreclose private enforcement against any entity other than a Federal agency. *Dittman*, 191 F.3d at 1028. The statutory language, therefore, both reflects the congressional intent to defer the application and enforcement analysis for governmental organizations pending the Commission's study, and the intent not to create private enforceable rights against the states.

The Supreme Court has recognized that "whether Congress . . . intended to create a private right of action [is] definitively answered in the negative" where "a statute by its terms grants no private rights to any identifiable class." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284  (2002).   *See also Blessing v. Freestone*, 520 U.S. 329, 341 (1997); *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 509 (1990).   Here, the statutory language is directed at and constrains governmental action; it does not identify or create a class of persons or a specific and enforceable private right.   *See Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons'" (quoting

26

*California v. Sierra Club*, 451 U.S. 287, 294 (1981)).   Because Congress did not create an

"unambiguously conferred right" to individuals in section 7 of the Privacy Act, a §1983

action will not lie.

Moreover, "even where a statute is phrased in such explicit rights-creating terms, a

plaintiff suing under an implied right of action still must show that the statute manifests an

intent "to create not just a private right, but also a private remedy."" *Gonzaga*, 536 U.S.

271, 284 (quoting *Alexander*, 532 U.S. at 289).   As explained above, the Privacy Act does

not clearly create a private remedy against the states.

## V.       THE COMPLAINT FAILS TO PLAUSIBLY STATE A CLAIM OF FEDERAL PREEMPTION UNDER THE SUPREMACY CLAUSE

Contrary to Plaintiff's assertion, this case does not concern conflict or field

preemption, or the supremacy of federal law over state law.   Rather, what is at issue in this

case is whether 42 U.S.C. § 666 and 42 U.S.C. § 405 are proper federal authority under

which a state actor may collect, and sanction the failure to disclose, Social Security

numbers.   To the extent there is any conflict, it is between a conflict between federal

statutes -- the Privacy Act and 42 U.S.C. § 666 and 42 U.S.C. § 405.

As a preliminary matter, Plaintiff must overcome the presumption against

preemption, which is only defeated where the area of regulation is one "traditionally

regulated by the federal government."   *United States v. South Carolina*, 720 F.3d 518, 529

(4th Cir 2013).   The regulation of privacy and the protection of social security numbers

are not areas in which the federal government exercises primary or exclusive control.

Indeed, the State of Maryland has provided strong protection of personal information

through the Social Security Number Privacy Act, Md. Code Ann., Com. Law § 14-3401, *et seq.* (2014) (regulating the display and use of Social Security numbers), and the Medical Records Privacy Act, Md. Code Ann., Health Gen. § 4-301, *et seq.* (2014) (establishing confidentiality standards for medical records).

Although Plaintiff has not raised the issue of field preemption directly, it is clear that the principle has no application in this case.   Only where Congress occupies a certain field by "regulating so pervasively that there is no room left for the state to supplement federal law" may field preemption be said to apply.   *Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).    Or, where there is a "federal interest … so dominate that the federal system will be assumed to preclude enforcement of state laws on the same subject."   *Arizona v. United* States, 132 S. Ct. 2492, 2501 (2012).   As the Social Security Number Privacy and the Medical Records Privacy Acts demonstrate, the State of Maryland can and does regulate privacy interests.

Plaintiff contends nonetheless that the Federal Privacy Act, which permits states others to collect Social Security numbers when required by federal law, necessarily "trumps" any state law "conflicting" with its provisions.   Framed as such, the question sets up a false imperative and fails to identify correctly the actual issue. Although the Federal Privacy Act makes it "unlawful…[for] any state … agency to deny to any individual any right…because of such individual's refusal to disclose his social security number," the act provides two exceptions, including any disclosure "required by federal statute."    Pub. L. No. 93-579, § 7 (a)(1), at 5 U.S.C. § 552a (note).    As explained *supra* Section II, federal law expressly authorizes this collection and disclosure.   Thus, to the

extent there are competing congressional interests – one of privacy (manifested in the Privacy Act), and the other of enforcement (child support enforcement of the Welfare Reform Act) – the conflict is between two federal statutes.

In order to find conflict preemption, compliance with a federal and state regulation must be a "physical impossibility and the instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *United States*, at 529 (quoting *Arizona*, 132 S. Ct. at 2501). The application of the *Arizona* standard is plainly odds under the facts at hand. Maryland Rules 16-811.5 and 16-811.6, which were promulgated to comply with State law, are not in conflict with federal law – rather, the statutes they implement were enacted to comply with and are *derived from* an explicit federal directive. Because the state laws do not conflict with federal law in that there were specially designed to comply with a federal directive, this case is distinguishable from other cases where conflict preemption has been found.

For example, where the State of South Carolina enacted its own immigration laws based on its perception that "the United States [failed] to secure its southern border and protect its national security," the Fourth Circuit held that the state law was preempted by federal immigration law. *United States*, at 522. Under the law, it was a crime for an "unlawfully present person to allow himself or herself to be transported or moved with the state or to be harbored or sheltered to avoid detection." *Id.* at 529. The Court recognized the general rule that "it is not a crime for a removable alien to remain present in the United States" and found that it would be nearly impossible for a person not lawfully present to avoid violating the law. Because it was an impossibility to comply with both the federal

and state laws, the state laws were deemed invalid. No such impossibility is raised by the facts in this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion for Summary Judgment and grant Defendants' Motion to Dismiss, or, in the alternative, Motion for Summary Judgment.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

_____/s/_____
MICHELE J. McDONALD
Assistant Attorney General
Federal Bar No. 23603
Courts & Judicial Affairs Division
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576–6576   (telephone)
(410) 576–6393   (facsimile)
mmcdonald@oag.state.md.us

*Attorneys for Defendants*

**United States District Court For The District of Maryland**
Civil Case No. 1:14-cv-01668-RDB

## EXHIBIT LIST

**Exhibit**          **Description**

1          Omitted to conform to ECF Numbering.

2          Affidavit of Janet Moss.

    A.  Letter from Chief Judge Bell to Maryland Attorneys—Dated August 13, 2009.

    B.  Letter from Chief Judge Bell to Maryland Attorneys—Dated February 15, 2013.

    C.  Letter from Chief Judge Bell to Maryland Attorneys—Dated May 3, 2013.

3          Affidavit of Sherie Liber

    A.  Letter from Judge Alan Wilner to Judges of the Maryland Court of Appeals—Dated September 23, 2013.

    B.  Letter from Judge Alan Wilner to Judges of the Maryland Court of Appeals—Dated November 15, 2013.

4          Affidavit of David Durfee

    A.  2014 Fiscal Year Judicial Budget Overview And Introduction

5          Senate Bill 3418

6          House Bill 16373

7          93 P.L. 579; 88 Stat. 1896

**Appendix 1**   *Greidinger v. Almand*, No. RDB- 14-1454, 2014 U.S. Dist. LEXIS, at *10 (D. Md. July 3, 2014)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 8th day of July, 2014 a copy of the foregoing was served by electronic means via the Court's Case Management / Electronic Case Files (CM/ECF) system on the persons entitled to receive such notice:

Scott Michelman
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009

James R. Klimaski
Klimaski & Associates, P.C.
1625 Massachusetts Avenue, NW
Suite 500
Washington, DC 20036

*Attorneys for Plaintiff*

_____/s/_____
Michele J. McDonald
Assistant Attorney General